[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2004
THOMAS  K. KAHN
CLERK

No. 03-13283
Non-Argument Calendar
_____

D. C. Docket No. 02-00007-CV-J-32-HTS

STANLEY LEWIS GASKINS,

Petitioner-Appellant,

versus

JAMES CROSBY, Secretary,
Florida Department of Corrections,
CHARLIE CRIST,
Florida Attorney General,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 28, 2004)**

Before ANDERSON, CARNES, and WILSON, Circuit Judges.

PER CURIAM:

Stanley Lewis Gaskins, a state prisoner proceeding pro se, appeals the denial

of his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. We

affirm the district court's denial.

In 1990 Gaskins was sentenced by a Florida court to 20 years imprisonment

for various offenses. At the time Gaskins committed the offenses, the Florida

Provisional Credits statute was in effect. See Fla. Stat. § 944.277(1) (Supp. 1988).

Under this statute, when state prison overcrowding reached a certain threshold

eligible Florida inmates received "provisional credits," a form of gain-time which

advanced their release dates.[1] See id. Pursuant to this statute, Gaskins was

awarded 270 days of provisional credits while serving his sentence.

After Gaskins committed his offenses, the Florida legislature changed its

approach to the problem of prison overcrowding. It enacted the Control Release

statute, see Fla. Stat. § 947.146, and the Provisional Credits statute was

subsequently repealed, Fla. Stat. § 944.278 (though other gain-time statutes were

left in place). Inmates who are eligible for control release may be released into the

community under supervision much earlier than they would have been under prior

statutes. However, the Control Release statute has more stringent eligibility

requirements than prior Florida overcrowding credit statutes. See generally, Fla.

_____

[1] For a detailed history of the "maze of overcrowding gain time statutes" enacted in
Florida since the early 1970s, see Gomez v. Singletary, 733 So. 2d 499, 500-02 (Fla. 1998).

2

Stat. § 947.146; Fla. Admin. Code 23-22.006-015.  Also, if a prisoner violates the terms of his control release, the parole commission is authorized to revoke all gain-time earned by the prisoner prior to release – not just that picked up under the Control Release program but also all other gain-time he may have received under other statutes.  See Fla. Stat. §§ 944.28(1), 947.141(6).

As of June 23, 1992, Gaskins had earned 2953 control release credits under the new statute, and he was offered early release to control release supervision.  He was not required to participate in the new program.  He knowingly and voluntarily chose to do so, agreeing to all the terms and conditions of the Control Release program, including its broad forfeiture provision.  By opting to come under the program, Gaskins was released from prison after serving only two years of his 20-year sentence.

Showing nothing if not a lack of gratitude, shortly after his release from prison Gaskins violated the conditions of his control release on multiple occasions and was returned to custody in July 1993.  As a result of those violations of the release conditions, Gaskins' 270 days of provisional credits were not forfeited at that time, but 734 days of gain-time previously awarded under other statutes were forfeited.[2]

---

[2] The Florida legislation repealing the Provisional Credits statute also mandated the cancellation of all credits that had been awarded under that statute to Florida inmates.  See Fla.

About a year after returning to prison, Gaskins received another opportunity to obtain early release after accumulating 3258 control release credits. On October 25, 1994, Gaskins again elected to accept release under that program. In doing so, he agreed to the terms and conditions of control release, including the forfeiture provision. Apparently not having learned much from his earlier experience, Gaskins again violated the terms of his controlled release. On November 16, 1995, he briefly returned to prison as a control release violator.

The parole commission gave Gaskins yet another chance, once more granting him control release. On December 21, 1995, Gaskins was released a final time under the Control Release program.

Over the next four years Gaskins continued violating the terms of his control release. After numerous violations his release was revoked effective October 15, 1999, and he was returned to prison on November 22, 1999. After Gaskins returned to prison, all of his gain-time was forfeited pursuant to Fla. Stat. § 944.28(1), including those 270 days he had earned under the Provisional Credits statute.

On January 4, 2000, Gaskins petitioned the Florida trial court for habeas

Stat. § 944.278. Under that provision of the repeal legislation, 270 days of Gaskins' credits were cancelled in 1994. However, those credits were restored in 1997 following the Supreme Court's decision that the Florida legislature's retroactive cancellation of release credits violated the Ex Post Facto Clause. See Lynce v. Mathis, 519 U.S. 433, 446-47, 117 S. Ct. 891, 898 (1997).

relief.  Gaskins alleged that when he entered into his plea agreement in 1990 he had an expectation of reduced imprisonment under the old release system.  He argued that the Florida Legislature's substitution of the control release regime for the one that had been in effect before constituted a violation of the Ex Post Facto Clause.  The Control Release program was less beneficial than the one that had been in effect before it, he asserted, and that meant the legislature had retroactively increased his punishment.

The state court denied Gaskins' habeas petition, concluding that he had waived the right to challenge the constitutionality of gain-time forfeiture because he had violated the terms of control release to which he expressly agreed.  The court cited Florida Supreme Court decisions supporting this proposition including Lewis v. Moore, 753 So. 2d 1242, 1244 (Fla. 2000) (per curiam), and Bowles v. Singletary, 698 So. 2d 1201, 1204 (Fla. 1997) (per curiam).  The state habeas court also highlighted the fact that Gaskins was not coerced into signing the control release agreement, that he never asked for his control release status to be rescinded, and that because he had accepted control release he had been free for nearly six years.  The court found support for its conclusion in Arnett v. Kennedy, 416 U.S. 134, 152-54, 94 S. Ct. 1633, 1643-44 (1974), which held that a party may not retain the benefits of an act of law while simultaneously attacking the

5

constitutionality of one of the law's important conditions.

After the trial court denied Gaskins' habeas petition, the Florida First District Court of Appeal denied Gaskins' petition for a writ of certiorari. Gaskins raised the same ex post facto argument in his § 2254 petition to the federal district court. The district court rejected that argument. So do we.

This is not a difficult case. To fall within the ex post facto prohibition, a law must be retrospective and it "must disadvantage the offender affected by it," Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981), by altering the definition of criminal conduct or increasing the punishment for the crime, Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990). Neither the Ex Post Facto Clause nor any other part of the Constitution prevents a state from permitting a prisoner to bargain away earned release credits, any more than it prohibits a state from permitting a defendant to bargain away all of his trial rights or his right to appeal once convicted. And bargain is what Gaskins did. He struck a deal with the State of Florida concerning his release date. In return for the State permitting him to participate in a more generous early release program, Gaskins bargained away any right he had to have release credits he had earned earlier under other statutes forfeited only under the terms of those earlier statutes.

The state trial court put this same conclusion in terms of waiver. It said that

by accepting the provisions of the Control Release program Gaskins waived any possible ex post facto claim for the forfeiture of the credits he had earned under earlier statutes. This point has also been made a number of times by the Florida Supreme Court. See Wilson v. Moore, 782 So. 2d 865, 866-67 (Fla. 2001) (per curiam) ("[L]ike other types of gain time, control release credits and provisional credits are forfeitable upon control release revocation if . . . the releasee waived ex post facto claims by accepting early release on control release."); see also Westberry v. Moore, 772 So. 2d 1208, 1208-09 (Fla. 2000) (per curiam); Lewis, 753 So. 2d at 1244; Bowles, 698 So. 2d at 1203-04.

Gaskins cites two cases from the United States Supreme Court and one from the Florida Supreme Court concluding that the retroactive cancellation, reduction, or lowered availability of gain-time credits and provisional credits in Florida is unconstitutional. See Lynce v. Mathis, 519 U.S. 433, 439-49, 117 S. Ct. 891, 895-900 (1997); Weaver, 450 U.S. at 35-36, 101 S. Ct. at 967-68; Gomez v. Singletary, 733 So. 2d 499, 504-05 (Fla. 1998). The rule of those decisions does not apply to this case, because Gaskins' earned credits were not retroactively cancelled or reduced by legislative fiat. Instead, like the prisoners in Wilson, Westberry, Lewis, and Bowles, Gaskins took advantage of an opportunity new legislation offered him and struck a bargain with the State. The State lived up to its side of the bargain,

7

and the Constitution does not prevent it from holding Gaskins to his side of the deal.

To say the least, the state court decision reaching that conclusion is not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court's denial of Gaskins' petition is **AFFIRMED**.