Anthony COLLINS, Plaintiff,

v.

Brian K. HENDRICKSON;
et al., Defendants.

No. 8:02 CV 1438 T 27MSS.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 26, 2005.

Anthony Collins, Lake Butler, FL, pro se.

Beverly Brewster, Judy A. Bone, General Counsel's Office, Department of Corrections, Bradley R. Bischoff, Office of the Attorney General, Tallahassee, FL, for Defendants.

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

WHITTEMORE, District Judge.

**BEFORE THE COURT** is Petitioner's *pro se* Amended Petition for Writ of Habeas Corpus. filed pursuant to 28 U.S.C. § 2254 (Dkt. 13). Upon consideration, the Petition for Writ of Habeas Corpus is GRANTED. The Florida Parole Commission is accordingly **ORDERED** to forthwith release Petitioner ANTHONY COLLINS, a/k/a EDWARD KING, DC # 072597, under the terms and conditions of its July 9, 1991 Control Release Agreement.

This cause was referred to the Honorable Mary S. Scriven. United States Magistrate Judge. (Dkt. 58). Judge Scriven, in a thoughtful, well reasoned and detailed

analysis of the factual and procedural history relevant to Petitioner's claims and after correctly applying federal law, has rendered her Report and Recommendation, concluding that the Florida Parole Commission ("FPC"), in its July 26, 2000 revocation of Petitioner's Control Release, failed to comply with the procedures mandated by Fla. Stat. § 947.141(4) for revocation of Control Release, violating Petitioner's 14th Amendment due process rights, as recognized by Florida and federal law.[1]

On July 9, 1991, Petitioner, while serving concurrent 20 and 15 year sentences for strong armed robbery, armed robbery, armed burglary and aggravated battery, was granted control release pursuant to a Florida law authorizing the early release of Florida inmates to control the rising prison population. The FPC administered the program, acting as the Control Release Authority. *See* Fla. Stat. § 947.146.[2] In 1994, Petitioner was arrested for violation of the conditions of his release. After a hearing, he was restored to supervision. (Dkt. 7, Ex. E). In July, 1999. Petitioner had an argument with his girlfriend, resulting in his arrest on and conviction of domestic battery. As a result, the FPC issued an arrest warrant and, based upon Petitioner's conviction, revoked his supervision, notwithstanding the hearing officer's recommendation that Petitioner be restored to supervision (Dkt. 7, Ex. H).

After Petitioner successfully moved to vacate his un-counseled guilty plea to the domestic battery charge, the FPC vacated its earlier revocation order and restored Petitioner to supervision. (Dkt. 7, Ex. I). The next day, however, the FPC issued an arrest warrant based on Petitioner's "behavior", rather than his domestic violence conviction. (Dkt. 7, Ex. J). While Petitioner's revocation proceeding was pending, the State Attorney nolle prossed the domestic battery charge. (Dkt. 39). A revocation hearing was conducted by Parole Examiner Cooper. on June 13, 2000. P.E. Cooper found Petitioner not guilty and recommended that Petitioner be released on control release supervision. (Dkt. 1, Ex. F at 8).

On July 26, 2000, in the decision Judge Scriven found violated Petitioner's 14th Amendment due process rights, the FPC revoked Petitioner's supervision and returned him to custody, effectively rejecting P.E. Cooper's factual finding that Petitioner did not violate the conditions of his release in the incident involving his girlfriend. (Dkt. 7, Ex. L).[3]

A parolee enjoys a liberty interest protected by the 14th Amendment's due process clause. *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir.1987), *cert. denied*, 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) ("Once an individual has been released into society under the constraints of

1. Neither party filed objections to the Report and Recommendation.

2. As The Magistrate Judge observed, when he was released to control release, Petitioner's tentative release date, based on accumulated gain time, was April 13, 1996. "Plainly put, Petitioner's remaining sentence had been reduced to less than five years." (Dkt. 70, p. 5).

3. The Florida Department of Corrections thereafter forfeited 4.210 days of Petitioner's gain time. (Dkt. 10, Ex. H, Ex. 3). On Peti-

tioner's claim that this was an unconstitutional *ex post facto* application of Florida law, the state court concluded that Petitioner had waived that claim. Judge Scriven correctly concluded that the state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law, that it was not based on an unreasonable *determination of facts*, and that the state court's factual determination was entitled to a presumption of correctness. (Dkt. 70. p. 26–28).

either parole or probation, however, the resulting freedom, 'although indeterminate, includes many of the core values of unqualified liberty' and thus inherently 'falls within the protection of the Fourteenth Amendment.' ") The parolee's due process rights are implemented when that liberty interest is subject to revocation. *Id.* In Florida, revocation hearings are governed by due process considerations. *See Gillard v. State,* 827 So.2d 316 (Fla. 1st DCA 2002) (citing *Morrissey,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

■ As the Magistrate Judge correctly observed, Fla. Stat. § 947.141 places substantive limitations on the FPC when it is deciding whether to revoke a person's supervision. In sum, the FPC must make its decision based on the factual findings of its authorized representative, the hearing examiner. The FPC cannot disregard a hearing examiner's factual findings and substitute its own, where the hearing examiner's findings are supported by competent, substantial evidence and it is a "departure from the essential requirements of law" for a court to affirm a decision of the FPC under those circumstances. *Tedder v. Florida Parole Commission,* 842 So.2d 1022 (Fla. 1st DCA 2003)[4]; *see also, Mabrey v. Florida Parole Commission,* 858 So.2d 1176, 1183 (Fla. 2d DCA 2003): *Merritt v. Crosby,* 893 So.2d 598, (Fla. 1st DCA 2005)("As we explained in *Tedder v. Florida Parole Commission,* (citation omitted), the Parole Commission is not at liberty to reweigh the evidence considered by the hearing examiner in order to find a violation where the examiner's finding to the contrary is supported by competent, substantial evidence.")

The Magistrate Judge correctly recognized that liberty interests can arise from state law where, as here, a statute places substantive limitations on official discretion. (Dkt. 70, p. 33: citing *Ellard,* 824 F.2d at 942). It follows that the limitations placed on the FPC's discretion in § 947.141 give rise to due process protections to parolees such as Petitioner who are facing revocation. In *Ellard,* the Eleventh Circuit observed:

"As the Supreme Court has made clear, where a claimed liberty interest does not arise from the due process clause itself, '[t]he ground for any constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising' the claimed liberty interest. The due process clause, in short, prohibits the states from negating by their actions rights that they have conferred by their words. The states, of course, may elect not to confer rights, such as parole, that are not inherent in the Constitution. But once a state does choose to confer such a right, the prisoner's interest has 'real substance,' and the right can be revoked only under the limitations im-

---

4. In *Tedder,* a case involving a FPC revocation decision, the court quoted from *Heifetz v. Dep't of Bus. Reg.,* 475 So.2d 1277, 1281 (Fla. 1st DCA 1985):

Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact.... It is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence.... If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. The agency may not reject the hearing officer's finding unless there is no competent, substantial evidence from which the finding could reasonably be inferred. The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion.

posed by the Due Process Clause."*(citations omitted )*.

*Ellard,* 824 F.2d at 943.

The Magistrate Judge correctly concluded that Petitioner's due process rights were violated when the FPC, contrary to the mandate of Fla. Stat. § 947.141, effectively rejected P.E. Cooper's factual findings in favor of Petitioner and substituted its own findings, rather than making its determination "based upon the findings of fact presented by ... the authorized representative", where the findings of P.E. Cooper were supported by competent, substantial evidence. Further, the Magistrate Judge correctly concluded that the state court's decision denying Petitioner relief was "contrary to, or involved an unreasonable application of federal law," 28 U.S.C. § 2254(d)(1). Finally, the Magistrate Judge correctly concluded that the "FPC's action was contrary to state law *and* to 'clearly established Federal law, as determined by the Supreme Court of the United States.' " (Dkt. 70, p. 38).

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Magistrate Judge's Report and Recommendation is approved and adopted in all respects and made a part of this order for all purposes, including appeal.

2. Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 13) is

1. Charles J. Crist, Jr., the current Attorney General for the State of Florida, is substituted as the proper party respondent for Robert A. Butterworth, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

2. Pursuant to Local Rule 6.01(c)(17) (M.D.Fla.), a magistrate judge may, upon referral, assist the district court judge in a § 2241 case in all matters necessary to "develop a complete record, including the conduct of evidentiary hearings, and the preparation of a report and recommendation to the Court as to appropriate disposition of the petition or claim."

GRANTED. The State of Florida, acting through the Florida Parole Commission and the Florida Department of Corrections, is **ORDERED** to forthwith release Petitioner ANTHONY COLLINS, a/k/a EDWARD KING, DC # 072597 under the terms and conditions of its July 9, 1991 Control Release Agreement, subject to any lawful detainers, if any.

3. The Clerk is directed to close this case and deny any pending motions as moot.

Anthony Collins, a/k/a Edward King, Petitioner,

v.

Brian K. Hendrickson, Charles J. Crist, Jr.,[1] and Florida Parole Commission, Respondents.

## *REPORT AND RECOMMENDATION*

SCRIVEN, United States Magistrate Judge.

This cause comes on for consideration of Petitioner's amended petition filed pursuant to 28 U.S.C. § 2241 seeking federal habeas relief from the 2000 revocation of his control release supervision and the subsequent forfeiture of gain time by the Florida Department of Corrections (hereinafter "FDOC") (Dkt. 13).[2] The Florida Parole Commission (hereinafter "FPC") was added as a respondent on October 18, 2002 (Dkt. 9).[3] Respondents have filed

3. The Control Release Authority is composed of the members of the Florida Parole Commission. Thus, the FPC has broad authority in administering the control release program, including the authority to determine whether a control releasee has violated the terms and conditions of release and the power to determine what actions should be taken in regard to such violations. *See Gay v. Singletary,* 700 So.2d 1220 1222–23 (Fla.1997); *see also* Fla. Stat. §§ 947.13, 947.141, 947.146.

responses to the petition (Dkts. 7; 10; 14; 15). Petitioner has filed a motion for summary judgment (Dkt. 24), and Respondents have filed opposition thereto (Dkt. 35). This matter was referred to the Undersigned for a report and recommendation on the motion for summary judgment and the disposition of the petition (Dkt. 41).

As the United States Supreme Court opined in *Harris v. Nelson*, "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." 394 U.S. 286, 292, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Toward this end, the Undersigned has undertaken the review of Petitioner's request for federal habeas relief, and having considered the parties' positions and being otherwise fully advised in the premises, finds, for reasons set forth below, that Petitioner's motion should be granted. To do otherwise would, for reasons discussed *infra*, mean that Petitioner will, in this instance, effectively serve a life sentence for allegedly "pushing" his girlfriend.

### Background

On August 5, 1988, Petitioner was convicted of strong armed robbery in Broward County, Florida, Case No. 87–19456CF, and sentenced to serve a term of fifteen (15) years imprisonment (Dkt. 7, Ex. A). That same day, Petitioner was convicted of armed robbery (Count I), armed burglary (Count II), and aggravated battery (Count III) in Broward County, Florida, Case No. 88–2089CF. Petitioner was sentenced to serve concurrent terms of twenty (20) years imprisonment on Counts I and II and fifteen (15) years imprisonment on Count III, with all counts to run concurrently with the sentence in Case No. 87–19456CF (Dkt. 7, Ex. B). On September 27, 1988, Petitioner was committed to the custody of the FDOC to begin serving his sentences.

In April, 1989, the FDOC contacted the Florida Department of Law Enforcement (hereinafter "FDLE") regarding allegations of narcotic distribution and official misconduct occurring within the Martin Correctional Institution (hereinafter "MCI") (Dkt. 13, Ex. B). The FDLE initiated an investigation, the scope of which expanded with reports of illegal activity at other state correctional institutions. *Id.*

Cooperating with the FDLE and the Office of the State Attorney, Nineteenth Judicial Circuit, Martin County, Florida, Petitioner became involved in the ongoing investigation (Dkt. 13, Exs. A & B). Petitioner provided the FDLE specific details regarding the manner in which the narcotics were brought into the prison facilities, as well as the organizational structure of the groups involved. By June 1991, the investigation had resulted in the arrest of 21 individuals and the identification of others involved in the conspiracy, including FDOC employees, inmates, former inmates, and inmate family members. *Id.*

After he agreed to testify against a fellow inmate, Petitioner was removed from the MCI's general population. Pressure placed on Petitioner about his decision to testify resulted in a decision by the State to depose him. Petitioner's deposition testimony outlined the involvement of the defendant inmate and other targets of the investigation in the distribution of drugs and other contraband within the MCI.

Information regarding the scope of the investigation and Petitioner's role therein was provided to the defendant inmate's attorney during the discovery process. When the charges against the defendant inmate were ultimately withdrawn because

two of the prosecution's witnesses recanted their statements, Petitioner was returned to the general population at MCI. Knowing that it was likely that the defendant inmate had disclosed Petitioner's involvement in the investigation to others within the prison system, Petitioner nonetheless agreed to testify against another target of the investigation.

In a continuing effort to maintain the state prison population below 97.5 percent of its lawful capacity, as required by statute, *see* Fla. Stat. § 947.146, the FPC routinely reviewed inmate files for control release[4] consideration. According to correspondence prepared by the FPC on January 17, 1991, an evaluation of Petitioner's file had been conducted by that time, and an advanceable control release date of June 12, 1995 was established for him (Dkt. 10, Ex. A at 22).

According to Petitioner, his role in the investigation subsequently led to concerns regarding his safety within the Florida prison system, and Petitioner requested an early parole (Dkt. 13, Ex. A). Information regarding Petitioner's role in the investigation was communicated to members of the FPC in support of his request for an early parole in the June 10, 1991 letter written to the FPC by the assistant state attorney prosecuting the criminal charges brought as a result of the FDLE investigation (Dkt. 13, Ex. A) and during a telephone conversation an assistant commissioner of the FDLE had with the commissioner of the FPC, later confirmed by letter on June 25, 1991 (Dkt. 13, Ex. B). Both the assistant state attorney and the FDLE encouraged the FPC to consider Petitioner's role

in the investigation in determining his eligibility for control release (Dkt. 13, Ex. B). In its letter, the FDLE recommended that if the FPC were to determine that Petitioner was eligible for early release, "[a]s a condition of any release provided, [Petitioner] should remain supervised until such time that all criminal and civil litigation has been completed." *Id.*

On July 3, 1991, the FPC notified the FDOC that having "considered new information per state attorney and FDLE," it was adjusting Petitioner's control release date to July 9, 1991. At that time, Petitioner had been awarded 2,400 days basic gain time, 500 days additional gain time, and 1,310 days administrative gain time. His tentative release date, adjusted based on the gain time awards, was April 13, 1996. Plainly put, Petitioner's remaining sentence had been reduced to less than 5 years.

Petitioner was released from prison after he signed the Notice of Control Release Terms and Conditions acknowledging that he was subject to the terms of "Control Release" supervision until *October 23, 2007* (Dkt. 13, Ex. D). While the FPC was charged with determining the appropriate terms and conditions of control release, the legislature mandated that the FPC "adopt as a standard condition for all persons released pursuant to [§ 947.146] that such persons shall not commit a violation which constitutes a felony." Fla. Stat. § 947.146(10).

Upon his release, Petitioner established a residence with Shannette Khaleel (hereinafter "Khaleel") in Delray Beach, Florida

---

4. Beginning in 1983, the Florida Legislature enacted a series of statutes authorizing the FDOC to award early release credits to prison inmates when the population of the state prison system exceeded predetermined levels. The control release statute was enacted in 1989 and became effective on September 1, 1990. One in a series of mechanisms devised to relieve prison overcrowding, control release was administered by the FPC as the Control Release Authority. Fla. Stat. § 947.146 (1989–1993). The control release program authorized release from incarceration rather than gain-time to control the rising prison population.

(Dkt. 1, Ex. A). On January 4, 1993, Petitioner executed a second Notice of Control Release and Terms and Conditions of Supervision (Dkt. 10, Ex. A at 37). The terms and conditions of his control release and the termination date thereof remained unchanged.[5]

On September 1, 1994, the FPC issued a warrant for Petitioner's arrest for violation of the conditions of his release (Dkt. 7, Ex. D). Petitioner was charged as follows:

Violated Condition 3 by failing to make a full and truthful report to his Control Release Officer before the fifth day of each month in writing on the form provided or in person, in that he did fail to make a full and truthful report in writing or in person for the months of April and May 1994.

Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Control Release in that on or about May 25, 1994, Palm Beach, Florida[,] he did unlawfully commit grand theft, to-wit: several loads of wood, located at Lake Ida Road, Delray Beach Florida.

Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Control Release in that on or about May 27, 1994, Palm Beach, Florida[,] he did unlawfully commit burglary of a structure, located at Lake Ida Road, Delray Beach, Florida.

Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Control Release in that on or about May 27, 1994, Palm Beach, Florida[,] he did unlawfully trespass onto the property located at Lake Ida Road, Delray Beach, Florida, without knowledge or consent of the owner, David Ettinger.

*Id.* A final hearing on the charges was waived, and the FPC entered an order on February 14, 1995, finding that "proof was shown that [Petitioner] has violated the terms and conditions of the control release in a material respect; and ... after thorough consideration of said waiver of the hearing and other considerations, has reason to believe that the interest of society would best be served if the control release should not now be revoked; .. it is ordered that [Petitioner] be released from custody on the matter of control release violation and is hereby restored to supervision" (Dkt. 7, Ex. E).

A handwritten notation was made on the January 4, 1993 control release form stating that Petitioner was reinstructed on the terms and conditions of his controlled release on 12/7/95 (Dkt. 10, Ex. A at 37). The initials under the notation do not appear to be those of Petitioner. *Id.* Petitioner did, however, acknowledge by initialing the form that he was reinstructed regarding the terms and conditions of his control release supervision on March 18, 1996. *Id.*

On July 8, 1999, Petitioner and Khaleel argued about the keys to an automobile. Petitioner became angry when Khaleel refused to give him the keys and attempted to grab them from her hand. As Khaleel would later testify at Petitioner's second revocation hearing, during the argument, she stepped backward, stumbled, and hit her knee on a coffee table. Petitioner's mother was present during the incident. The police and emergency medical services were summoned to the scene. An emergency medical technician (hereinafter "EMT") examined Khaleel on the scene.

---

**5.** As discussed *infra,* Petitioner would reaffirm · the terms and conditions of his controlled release on two subsequent occasions by initialing this form. At some point, an unidentified person made the following handwritten notation on the form: "Term date in question." There is nothing to indicate when the notation was added or that any followup action was taken in this regard.

In her statement to the officers, Khaleel alleged that Petitioner "pushed" her. Petitioner was arrested on a charge of domestic battery and transported to the Polk County Jail. Without benefit of counsel, Petitioner entered a plea of guilty to the domestic battery charge on July 22, 1999. He was then sentenced to serve a one-year term of probation and released from jail.

On July 27, 1999, the FPC issued a warrant for Petitioner's arrest for violation of a condition of his release charging that Petitioner "[v]iolated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Control Release as evidenced by his conviction on July 22, 1999[,] in the County Court of Orlando, Florida for Domestic battery, case # M99–06554XX, and being sentenced to one year probation, and twenty-six weeks to the domestic violence program, said offense occurred during his term of Control Release supervision" (Dkt. 7, Ex. F). When he reported to his probation officer on August 12, 1999, Petitioner was taken into custody on the FPC's warrant (Dkt. 39, Attach. at 3).

Again agreeing to proceed without benefit of counsel, Petitioner appeared for a hearing before Parole Examiner (hereinafter "PE") Harv Buckner on September 1, 1999. During the hearing, Petitioner admitted that his domestic battery conviction constituted a violation as charged (Dkt. 7, Ex. G). Having before him Petitioner's certificate of control release, the Notice of Hearing, and Warrant, as well as letters from Khaleel, PE Buckner found Petitioner guilty of violating the conditions of his release, but recommended that he be restored to supervision. *Id.* at 1.

On review of the parole examiner's recommendation, the FPC found, however, that Petitioner "did violate the terms of his conditional release, and that it would be for the best interests of society and the Control Release, that [Petitioner] be returned to the custody of the [FDOC]." On November 10, 1999, the FPC entered an order revoking Petitioner's Control Release (Dkt. 7, Ex. H).

After being taken into custody on the FPC's arrest warrant, Petitioner filed a *pro se* motion to set aside his guilty plea in the Tenth Judicial Circuit Court, Polk County, Florida. Petitioner alleged that when he appeared before the County Court on July 22, 1999, on the domestic battery charge, he entered an uncounseled guilty plea without benefit of a full plea colloquy (Dkt. at 21). The state circuit court granted Petitioner's motion on March 13, 2000, and the case was returned to the County Court for trial. Since the FPC's 1999 order of revocation was based solely on Petitioner's having violated due to a conviction having been entered against him, the FPC entered an order on May 3, 2000, vacating the order and restored Petitioner to supervision (Dkt. 7, Ex. I).

This was not, however, the last Petitioner was to hear from the FPC as a consequence of the "pushing" incident. The following day, the FPC *sua sponte* issued another warrant for Petitioner's arrest based on his behavior rather than waiting to see if he would again be convicted of domestic battery,[6] charging that he "violat-

---

6. A finding that a releasee is in violation of the terms and conditions of controlled release may be premised on a criminal conviction *or* on behavior which is proscribed by the terms thereof. As the Florida Supreme Court stated in *Russ v. State,* "a revocation proceeding concerns Conduct which violates the terms of probation for an already-established criminal offense." 313 So.2d 758, 760 (Fla.1975). An acquittal on the merits of an alleged violation of law does not bar revocation for the same grounds because "[i]n a revocation proceeding after a subsequent arrest.., the question to be determined is not only by evidence of guilt of the offense for which the parolee is charged, but by evidence as to good behavior during the period of parole.... [W]hether or not a crime itself has been committed is not determinative of the issue of whether or not a parole violation has occurred." *Florida Pa-*

ed Condition 7 by failing to obey all laws, ordinances or statutory conditions of Control Release in that on or about July 8, 1999, in Polk County, Florida, he did unlawfully and intentionally touch, strike, or cause bodily harm to Shannette Khaleel, against the will of said victim" (Dkt. 7, Ex. J). Since an acquittal in a criminal case does not preclude a finding that a violation occurred based on the same conduct, the FPC's decision to charge Petitioner based on his "behavior" alone was proper. As the Florida Supreme Court explained, although a criminal case must be proven beyond a reasonable doubt, a probation violation need only be proven by a preponderance of the evidence. *See Russ v. State*, 313 So.2d 758, 760 (Fla.1975); *Robinson v. State*, 468 So.2d 1106 (Fla. 2d DCA 1985). *See also Morris v. State*, 727 So.2d 975, 977 (Fla. 1st DCA 1999).

Thus, Petitioner was arrested and remained in custody awaiting a hearing on the new violation of control release charge. Meanwhile, on May 15, 2000, the State filed a Notice of Nolle Prosse on the domestic battery charge (Dkt. 39 at 12). By the time PE Samuel W. Cooper (hereinafter "Cooper") served the notice of hearing on May 18, 2000, the only thing pending against Petitioner was the charge that he had violated the conditions of control release due to his behavior, which by then had been nolle prossed by the State. *Id.* at 7. Because he was indigent, Petitioner's

request for appointment of counsel was granted. He denied the charge, and represented by counsel, Petitioner appeared for a control release violation hearing on June 13, 2000, before PE Cooper.[7] The following items were available to Cooper during the hearing: (1) Notice of Hearing; (2) Certificate of Control Release; (3) Warrant; (4) Notice of Nollo Prosse; (5) Florida EMS Report; and (6) a letter from Khaleel dated June 6, 2000.

Cooper summarized Khaleel's testimony as follows: "on 7/8/99 she and Edward King had an argument over the car keys. She had the keys in her possession and he tried to grab them from her. She moved backwards and fell on her knee by the coffee table. He did not hit her or strike her. No abuse was involved." Cooper also noted that on cross examination Khaleel stated that both she and Petitioner were "the aggressor," Petitioner did not push or strike her, and statements she made to the investigating officer about Petitioner pushing her were "wrong" (Dkt. 1, Ex. F at 3–4).

Polk County Sheriff's Deputy Adam Hobbs was called to testify. Deputy Hobbs was the officer who responded to the report of a disturbance at Petitioner's home on July 8, 1999. According to Cooper, Deputy Hobbs testified that he could not locate the offense report and did not remember the case. *Id.*

---

role and Probation Comm'n v. Helton, 313 So.2d 413, 415 (Fla. 1st DCA 1975). Similarly, the United States Supreme Court has recognized that the decision to revoke a parol may be based on either a conviction or on behavior that is inconsistent with the goals of early release. *See Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "The liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. The *Morrissey* Court also recognized, however, that "[r]evo-

cation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480. Thus, "[w]hat is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's *behavior.*" *Id.* at 484 (emphasis added).

7. A copy of the transcript of the hearing has been provided by the FPC, *see* Dkt. 39.

Harv Buckner, the FPC PE who conducted the September 21, 1999 revocation hearing and recommended that Petitioner's supervised release be continued, was also called to testify. Cooper summarized Buckner's testimony as follows:

> [Buckner] testified that he conducted a Control Release Violation hearing on 9/21/99. The hearing dealt with the conviction for Battery which was later reversed by the court. He took testimony from Shannette Khaleel and Anthony Collins a/k/a/Edward King. On 5/15/00, he listened to the tape. The Releasee pled guilty to the charge which was a conviction, not a behavior. He stated that he pushed her. He was involved in counseling. He was on pain medication. Ms. Khaleel testified that the Releasee's statement was correct. This was the only incident of domestic violence. He recommended that the Releasee be restored to supervision, but the Commission revoked his supervision.

Dkt. 1, Ex. F at 4.

Petitioner was represented by Assistant Public Defender Terry D. Smith during the domestic battery proceedings. According to Cooper, Attorney Smith testified as follows:

> [Smith] stated that he represented the Releasee in the County Case ... They were prepared to go to trial when the State Attorney's Office entered the "No Bill" before going through jury selection. The State Attorney's Office did not have a copy of the Florida EMS report that contradicts what was in the Sheriff's Offense Report. The Offense Report reflected that the victim had a deep laceration but the EMS report reflected that the victim had a bruise on her knee. He stated that no medical service was rendered by EMS and the EMS report played a significant role in the State Attorney Officer's No Billing the case. He stated that Shannette Khaleel has gone through the State Attorney Office Counseling Force. She signed a Waiver of Prosecution. When the Releasee first appeared before the court for the Battery charge he was not represented by an attorney. [Smith] stated that the State case as lacking evidence that the Releasee had committed battery on Shannette Khaleel.

Dkt. 1, Ex. F at 5.

Brian Palmer testified that he was employed as a physician's assistant at the Community Health Center when Petitioner presented himself seeking treatment for lower back pain. Palmer could not recall the date on which Petitioner was treated, but was certain that it was in 1999. *Id.*

Cooper summarized testimony by Petitioner's mother, Bernice King, as follows:

> She witnessed the incident that occurred on 7/8/99. She was standing in the living room door. [Petitioner] wanted the keys and Shannette would not give them to him. Shannette backed up and stumbled over a table. [Petitioner] did not hit her. There was no bodily harm. They were arguing, but not fighting. Shannette did not receive any laceration or bruise on her knee when she fell to the floor.

*Id.*

According to Cooper, Petitioner testified as follows:

> On 7/8/99 Shannette Khaleel and he had an argument over the car keys. He wanted to go to the store and she did not want to give him the keys. He did not push or hit her. He did remove her hand from his hand when she grabbed him. He wanted to leave in order not to have any type of confrontation. He was leaving the room to get to his car in order for him to leave. He used the wrong choice of words in the first hearing because he did not push her. He

would not hurt her for anything in the world. He was put in the police car for approximately three hours before he was taken to jail. The officer was inside the house talking to Shannette. He also put in his report that there was a deep laceration which was not true. He admits that he was agitated and experiencing a tension problem that day because he was taking medication for his back pain. He was trying to diffuse the situation by leaving the house. This incident has cost him a great deal and he would like to be reinstated to supervision in order to take care of this matter.

Dkt. 1, Ex. F at 6.

Finally, Cooper heard testimony from Pauline Deshommes, Petitioner's control release officer. Cooper summarizes her testimony as follows:

[Deshommes] stated that [Petitioner's] case was transferred to her in April, 1999. On 7/10/99 she did a routine home visit. She talked to Shannette Khaleel and she told [Deshommes] that Collins had pushed her. Ms. Deshommes stated that she did not observe any bruises on Khaleel. She stated that in June, 1999, she experienced [Petitioner] getting out of control, but he apologized to her. She did not supervise him long enough before he was arrested for the current incident. He was on the waiting list for Polk Bridge Inpatient Substance Abuse Program. He had to give this up due to his back problem and medication that he was taking for it. She stated that she is amenable to community supervision. She would recommend that he participate in the recommended program.

Dkt. 1, Ex. F at 6.

After hearing testimony from eight witnesses, Cooper entered the following findings

[Petitioner] was found *not guilty* of violating Condition 7 on 7/8/99 in Polk County, Florida, of unlawfully and intentionally touch, strike, or cause bodily harm to Shannette Khaleel, against the will of said victim, based upon the testimony of Shannette Khaleel, Bernice King and [Petitioner] who testified that [he] did not touch, strike or cause bodily harm to Shannette Khaleel. They testified there was no laceration and the bruise on the knee came when she banged against the table and fell to her knees in an effort to get away from [Petitioner] who was attempting to take the car keys from her.

Dkt. 1, Ex. F at 7 (emphasis added). "[B]ased on the finding of not guilty," Cooper recommended that Petitioner be released on his own recognizance. *Id.* In his deposition recommendation, Cooper recommended that Petitioner "be released to Control Release Supervision based upon the finding of not guilty. He was released 7/9/91 to 10/23/07." Dkt. 1, Ex. F at 8.

On July 26, 2000, the FPC effectively rejected the PE's findings, substituted its own factual findings, and entered an order revoking Petitioner's control release supervision. The FPC relied on the following evidence in support of its revocation decision:

Condition # 7: finding of guilt based upon the testimony of Harvey Buckner, parole examiner for the hearing conducted on September 21, 1999, that subject Collins stated he had pushed the victim; based on the testimony of Harvey Buckner that victim Shannette Khaleel stated at the previous hearing that subject Collins' statement was correct; and based on the testimony of CPO Pauline Deshommes that victim Khaleel stated to her that [Petitioner] had pushed her.

In essence, the FPC credited the testimony of PE Buckner, who related Petitioner's testimony at the initial hearing, over the

testimony of the witnesses present before Cooper in the hearing that was then on review. Based on these findings, the FPC concluded that "it in the best interests of society and the Control Release, that [Petitioner] be returned to the custody of the [FDOC]" (Dkt. 7, Ex. L).

This did not, however, present an end to the unforeseen consequences of the incident between Petitioner and Klaheel that summer afternoon in 1999. On August 7, 2000, Petitioner was informed by an FDOC official that 4,631 days (12 years and 8 months) of previously awarded gain-time had been deemed forfeited based on the revocation of his control release supervision.[8]

Petitioner filed a formal grievance on August 14, 2000, at the institutional level contesting forfeiture of his gain time. He alleged that the application of the forfeiture provision to his case was a violation of the *ex post facto* clause of the Constitution, art. 1 § 9, cl. 3 (Dkt. 1, Ex. C). Petitioner exhausted his administrative remedies within the FDOC without success. He then turned to the judiciary for relief.

On November 8, 2000, Petitioner filed a Petition for Writ of Mandamus in the Sec-

ond Judicial Circuit Court, Leon County, Florida, seeking restoration of the forfeited gain-time (Dkt. 7, Ex. M). *See Collins v. Florida Dep't. Of Corrs.*, Case No. PC 00–02739 (Fla.2d Jud. Cir.Ct.2000). In its March 1, 2001 order denying Petitioner's request for issuance of a writ of mandamus, the state circuit court held as follows:

HAVING considered the Petition/Complaint for Writ of Mandamus, the Responses filed by Defendants Department of Corrections and Florida Parole Commission, and all other pleadings filed in this case, the Court finds that the pleadings show that Plaintiff is challenging his 1991 early release from prison due to prison overcrowding by way of placement on Control Release supervision, which action was performed by the Parole Commission pursuant to Section 947.146, Florida Statutes. Plaintiff contends that his acceptance of his release was not voluntary, and that because his offenses were committed prior to the effective date of the Control Release Program the Department of Corrections' forfeiture of his gain-time pursuant to Section 944.28(1), Florida Statutes was a violation of *ex post facto*.

---

**8.** On August 7, 2000, Petitioner requested that he be advised of "the exact amount of earned credits," including credit for jail time, he had accumulated. An FDOC official responded to Petitioner's request for information, informing him that he had 331 days pre-release jail credit, 41 days post-release jail credit, 2,400 days basic gain time, 610 days incentive gain time, and 1,400 days "provisional" credits. Based on this information, Petitioner, mistakenly including the 41 days post-release jail credit in his calculation, concluded that he was entitled to 4,782 days gain time credit toward his original sentence when he was released in 1991. When the FDOC responded to Petitioner's request for a recalculation of his anticipated release date as of July 1991, it revised its earlier statement, advising Petitioner that as of July 1991, he was actually only entitled to 331 days pre-release jail credit, 2,400 days basic gain time, 500 days incentive

gain time, and 1,400 days "provisional" credits. Based on this information, the FDOC concluded that in July 1991, Petitioner's tentative release date was January 14, 1996. *See* Dkt. 10, Ex. B, Ex. E thereto. Thus, Petitioner concluded that he lost 4,631 days "gain time." Both Petitioner and the DOC erred in calculating the total number of days Petitioner actually forfeited. First, Petitioner did not forfeit any of his jail credit. Second, the FDOC erred when it advised Petitioner that he had 1,400 days "provisional" credits, when, in fact, he was only eligible for 1,310 days of "administrative" gain time. Thus, Petitioner's tentative release date when he was placed on control release on July 9, 1991, was April 13, 1996. *See* Dkt. 10, Ex. E at 3. The FDOC actually forfeited 4,210 days of the gain time awarded to Petitioner prior to his release. *See* Dkt. 10, Ex. H, Ex. 3 thereto.

The Court finds and determines that Plaintiff's claim is not credible in that his signature on his Control Release certificate plus his failure to object creates the presumption that his early release was voluntarily accepted. *Bowles v. Singletary*, 698 So.2d 1201 (Fla.1997); *Delaine v. Singletary*, 715 So.2d 376 (Fla. 1st DCA 1998). Further, Plaintiff's claim is barred by principles of estoppel and waiver in that he waited until after the revocation of his Control Release to complain about his 1991 placement thereon. *See Bowles, supra; Roach v. Mitchell*, 456 So.2d 963 (Fla. 2d DCA 1984); *Gallagher v. State*, 421 So.2d 581 (Fla. 5th DCA 1982); *Joyner v. State*, 594 So.2d 328 (Fla. 2d DCA 1992), *approved*, 618 So.2d 205 (Fla. 1993). Plaintiff has consequently waived any *ex post facto* claim he may have had regarding the forfeiture of his gain-time.

Dkt. 16, Ex. N. Petitioner's Petition for Writ of Certiorari [9] was denied May 8, 2002. *See Collins v. Dep't. of Corrs.*, 816 So.2d 608 (Fla. 1st DCA 2002) (Table).

Petitioner challenged the revocation of his control release supervision by filing a petition for writ of habeas corpus in the Tenth Judicial Circuit Court, Polk County, Florida, (Case No. GCG–2000–3392) on January 23, 2001 (Dkt. 7, Ex. S). In its February 1, 2001, Order Denying Petition for Writ of Habeas Corpus, the state circuit court found as follows:

HAVING considered the Petition for Writ of Habeas Corpus, the Response filed by Respondent Florida Parole Commission, and all other pleadings filed in this case, the Court finds that the pleadings show that Petitioner is

challenging the July 26, 2000 revocation of his Control Release supervision. Petitioner contends that the revocation was improperly based solely on hearsay, violated due process, and was not willful and substantial. The Court finds and determines that Petitioner's claims lack merit and that by law Petitioner is not entitled to the extraordinary judicial relief of habeas corpus.

The Parole Commission properly revoked Petitioner's Control Release supervision based on its determination that Petitioner had committed the behavior constituting Domestic Battery by pushing the victim, Shannette Khaleel. This finding was supported by direct evidence consisting of hearing examiner Harv Buckner's testimony that Petitioner had admitted pushing the victim at his previous violation hearing. This direct evidence was admissible pursuant to Section 90.803(18) as an admission by a party, and pursuant to Section 90.803(22), Florida Statutes, as former testimony of a witness at another hearing.

The direct evidence was supported by admissible hearsay evidence consisting of Department of Corrections Control Release Officer Pauline Deshommes' testimony that Ms. Khaleel told her that the Petitioner had pushed her (FPC Exhibit K, p. 5), and by Public Defender Terry Smith's testimony that the Emergency Medical Services (EMS) report indicated that the victim suffered a bruise on her knee as a result (FPC Exhibit K, p. 4). The revocation of Petitioner's Control Release was thus not

---

**9.** Under Florida law, once an inmate has had a full review on the merits of an FPC order in the circuit court, he or she is not entitled to a second plenary appeal of the order in the district court of appeal. *See Sheley v. Florida Parole Comm.*, 703 So.2d 1202, 1205 (Fla. 1st DCA 1997) (criminal division en banc), *ap-*

*proved* 720 So.2d 216 (Fla.1998) (finding that "[a]lthough the Florida Parole Commission is an administrative agency, a special provision of the Administrative Procedure Act [§ 120.81(3)(a), Fla. Stat. (2002) ] exempts inmate orders from review by appeal.").

based exclusively on hearsay evidence. Proof sufficient to support a criminal conviction is not required to support a discretionary order revoking supervised release from prison. *State ex rel. Florida Parole and Probation Commission v. Helton,* 313 So.2d, 413 (Fla. 1st DCA 1975); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Inasmuch as the Commission considered testimony regarding Petitioner's prior violation hearing, and not a record of such hearing not introduced at the later hearing, Petitioner has failed to support his claim of a due process violation.

The Parole Commission properly exercised its discretion in determining that Petitioner's violation warranted revocation where Petitioner was on supervised release for violent offenses, and his commission of a violent act indicated that his violation was willful and substantial.

Dkt. 14, Ex. U. On March 6, 2001, the state circuit court issued an order finding that Petitioner's amended rebuttal to the FPC's response failed to "persuade [it] to reverse its ruling of denial" (Dkt. 14, Ex. V). The appellate court denied Petitioner's request for discretionary review, *per curiam,* on September 11, 2001. *See Collins v. Florida Parole Comm.,* 799 So.2d 1034 (Fla. 2d DCA 2001) (Table)

The instant Petition for Writ of Habeas Corpus was filed on August 8, 2002.[10] Petitioner raises two claims for relief:

1. Petitioner's *ex post facto* rights were violated by Respondent's forfeiture of gain time pursuant to section 944.28(1), Fla. Statutes; and

2. Petitioner's right to due process under the Fourteenth Amendment was violated where [the] decision to revoke parole was arbitrary and capri-

cious, was not based on substantial and willful violation, and was not supported by credible evidence.

Dkt. 13 at 7, 24. As discussed *above,* both claims have been exhausted in state court.

Petitioner filed a motion for summary judgment on the revocation claim only on May 12, 2003 (Dkt. 24). Respondents have filed opposition to the motion (Dkt. 35), and Petitioner has filed a reply thereto (Dkt. 54).

Recent developments in the circumstances of Petitioner's continued incarceration were brought to the Court's attention because of their potential impact on his ability to prosecute his claims effectively. Specifically, during the pendency of this case, Petitioner was transferred to an FDOC medical facility for treatment of facial injuries received during an altercation with another inmate on June 4, 2003 (Dkt. 45 at 1). The injuries were severe enough to require surgery, and while treating Petitioner, FDOC doctors discovered that he is afflicted with cancer of the lymph nodes. *Id.* at 2.

Petitioner requested and was granted a stay of these proceedings during his recovery from surgery (Dkt. 50). Petitioner was released from FDOC custody on October 21, 2003, on a conditional medical release (hereinafter "CMR") following a change in his prognosis once he was diagnosed with cancer in both the throat and the lungs (Dkt. 60, Ex. A). *See* Fla. Stat. § 947.149.

After his release, Petitioner resided with Khaleel and their two children while he underwent additional diagnostic tests and treatment. Then, Petitioner received good news from Doctor Lakhani, the ear, nose, and throat (hereinafter "ENT") surgeon who took the biopsies of Petitioner's

10. Delays in reviewing the petition were occasioned by Petitioner's hospitalization for vari-

ous medical conditions, as set forth *infra* at 1339–1340.

throat. The cancer treatment appeared to have effectively eradicated the cancerous cells in his throat. Petitioner was scheduled for monthly follow-up visits to check for any possibility of the throat cancer returning and referred to an oncologist for tests related to the lung cancer. On December 9, 2003, Dr. Lakhani communicated this information to Petitioner's conditional release officer (hereinafter "CRO") by telephone and then by letter written on February 25, 2004. Petitioner's CRO forwarded Dr. Lakhani's letter to the FPC "for informational purposes only" (Dkt. 60, Ex. B at 3). At that time, Petitioner was scheduled to undergo surgery to repair herniated discs in his lower back and further testing related to the ten tumors found in his lungs. *Id.*

Before Petitioner's scheduled back surgery, the bad news came. Less than a week after receiving Dr. Lakhani's letter regarding the remission of the throat cancer, the FPC issued a warrant charging that due to the change in his medical prognosis, Petitioner's medical or physical condition had "improved to the extent that he is no longer eligible for [CMR] under Section 947.149, Florida Statutes." The FPC directed that Petitioner be taken into custody and held pending a CMR revocation hearing.

On March 28, 2004, Petitioner filed a motion in these proceedings seeking, *inter alia,* a stay of the revocation proceedings pending a ruling on the instant petition (Dkt. 57). *See Rodwell v. Singletary,* 114 F.Supp.2d 1308, 1310 (M.D.Fla.2000) (citing *Adams v. United States,* 173 F.3d 1339, 1341 (11th Cir.1999)) The Clerk did not, however, receive the motion until March 31, 2004. The Court deferred ruling on Petitioner's request that it intervene pending receipt of the FPC's response to the motion (Dkt. 58). As the Court would later learn, by the time Petitioner's motion for a stay was received by the Clerk, Petitioner's revocation hearing on his CMR had already concluded. *See* Dkts. 59 & 60 at 4.

During the March 30, 2004, hearing before PE Lori Pille, Petitioner, represented by counsel, maintained that his medical condition had not improved to the point that he was no longer eligible for CMR. Petitioner argued that while he had received treatment for the cancer in his throat, he had been advised that follow-up treatment is required. Petitioner also advised Pille that there was no definitive diagnosis and treatment for other cancers found in his body because the FPC had him taken into custody before his diagnostic tests were completed. Pille found that Petitioner was no longer eligible for release under the CMR statute, but made the following disposition recommendation: "Although a finding of non-eligibility for [CMR] was found, it is the recommendation of this examiner, that [Petitioner] be allowed to remain on supervision until the completion of all remaining tests have been conducted to determine the progress of other cancers that may be within his body" (Dkt. 60, Ex. B at 7).

Relying on the February 25, 2004 letter from Dr. Lakhani stating that "even though [Petitioner's] medical records indicated he had a history of bilateral tonsillar squamores cell carcinoma with metastases in the neck, after CAT scans and MRIs were performed, no evidence existed of any further cancer and no further intervention was deemed necessary," the FPC again rejected its PE's recommendation and revoked Petitioner's CMR (Dkt. 60, Ex. C). Petitioner is currently incarcerated at an FDOC medical facility where he is receiving treatment and medication for a variety of ailments, including the tumors in his lungs and herniated discs in his lower back (Dkt. 67). His tentative release date is February 2, 2013.

### Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir.1999).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence [11] designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added).

An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50. A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

---

11. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324.

However, the party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog,* 193 F.3d at 1246 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142, (1970)). The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281 (11th Cir.1999) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (internal quotation marks omitted). "The movant[ ] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." *Id.* at 1281–82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" *Id.* at 1282 (quoting *Celotex* 477 U.S. at 323).

After the non-moving party properly has responded to a proper motion for summary judgment, the Court may grant the motion for summary judgment if the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir.1999). When making this determination, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Hinson v. Edmond,* 192 F.3d 1342, 1348 (11th Cir.1999); *St. Charles*

*Foods, Inc.,* 198 F.3d at 819. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.'" *St. Charles Foods, Inc.,* 198 F.3d at 819 (quoting *United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555 (11th Cir.1990)). Additionally, " '[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'" *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296–97 (11th Cir.1983)). Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." *Graham,* 193 F.3d at 1282. Finally, "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog,* 193 F.3d at 1246; *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (When considering motions for summary judgment, the Court does not make decisions as to the merits of disputed factual issues.); *Ryder Int'l Corp. v. First Am. Nat'l Bank,* 943 F.2d 1521, 1523 (11th Cir.1991). The Court determines whether genuine issues of material fact exist to be tried. *Graham,* 193 F.3d at 1282. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Id.* Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248.

## Discussion

Although Petitioner filed his petition pursuant to 28 U.S.C. § 2241, his petition is governed by both § 2241 and § 2254. *See Thomas v. Crosby,* 371 F.3d 782, 785 (11th Cir.2004) (finding that the petition was subject to both § 2241 and § 2254 even though the petition stated it was filed pursuant to § 2241 and attacked a decision

of the state parole commission rather than the petitioner's state court conviction). *See also Medberry v. Crosby*, 351 F.3d 1049, 1063 (11th Cir.2003) (holding that § 2241 and § 2254 apply to petitions for habeas corpus filed as § 2241 petitions where the petitioner is "in custody pursuant to the judgment of a state court."). "If § 2254 were not a restriction on § 2241's authority to grant the writ of habeas corpus, and were instead a freestanding, alternative post-conviction remedy, then § 2254 would serve no function at all." *Id.* at 1060.

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners. Because Petitioner filed his petition after AEDPA's enactment, its provisions are applicable thereto. *See Wilcox v. Florida Dep't of Corrs.*, 158 F.3d 1209, 1210 (11th Cir.1998), *cert. denied*, 531 U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000).

Where, as in the present case, a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir.2001), *cert. denied*, 536 U.S. 968, 122 S.Ct. 2682, 153 L.Ed.2d 853 (2002) (finding that the court must deny the writ unless one of two § 2254(d) exceptions applies).

The new § 2254 creates a deferential standard for federal court review of state court adjudications. In pertinent part, § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Eleventh Circuit interpreted the new standard in *Putman v. Head*:

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *See Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).

> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *See id.* An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* Notably, an "unreasonable application" is an "objectively unreasonable" application. *See Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Williams,* 529 U.S. at 412, 120 S.Ct. at 1523.

268 F.3d 1223, 1241 (11th Cir.2001), *cert. denied,* 537 U.S. 870, 123 S.Ct. 278, 154 L.Ed.2d 119 (2002) (footnotes omitted).

Because a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claims. *See Mobley,* 267 F.3d at 1316. In a recent decision addressing the level of deference which should be accorded a state court decision under § 2254(d), the Supreme Court stated:

> A federal court's collateral review of a state court decision must be consistent with the respect due state courts in our federal system .... [however], deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

*Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Finally, a federal habeas petitioner has the burden of overcoming all state court factual determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

"The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris* 394 U.S. at 291.

## Ground One

Petitioner's first claim is that because he offended prior to September 1, 1990, the effective date of the amendment to Florida Statutes, § 944.28(1), which authorizes the forfeiture of gain time upon revocation of control release, the FDOC violated the Ex Post Facto clause when it forfeited his gain time (Dkt. 13 at 7). *See* Fla. Stat. § 944.28(1). "To fall within the ex post facto prohibition, a law must be retrospective and it 'must disadvantage the offender affected by it'." *Gaskins v. Crosby,* 371 F.3d 820, 822 (11th Cir.2004) (citation omitted) (finding that "[n]either the Ex Post Facto Clause nor any other part of the Constitution prevents a state from permitting a prisoner to bargain away earned release credits, any more than it prohibits a state from permitting a defendant to bargain away all of his trial rights or his right to appeal once convicted").

As stated *supra,* when Petitioner was placed on control release supervision on July 9, 1991, he was serving a number of sentences entered by the Seventeenth Judicial Circuit Court, Broward County, Florida, on August 5, 1988 (Dkt. 7, Exs. A & B). The parties do not dispute the fact that these offenses were committed prior to the effective date of the Control Release Program on September 1, 1990 (Dkt. 7, Ex. C). *See Thomas v. Singletary,* 729 So.2d 369 (Fla.1998), *cert. denied,* 528 U.S. 884, 120 S.Ct. 200, 145 L.Ed.2d 169 (1999)

(discussing the history of the Control Release Program).

Petitioner does contend, however, that his release was not voluntary. A review of the Notice of Control Release and Terms and Conditions of Supervision Petitioner executed at the time he was released reveals that he did not initial the box marked "I agree to accept the terms and conditions of Control Release or if my offense(s) were committed on or after December 1, 1990, I acknowledge that I am subject to the terms and conditions of control release" (Dkt. 7, Ex. C).

According to Petitioner, he was released by the FDOC in 1991 because it could not guarantee his safety within the Florida prison system after he assisted the FDLE and FDOC in the prosecution of fellow inmates and FDOC corrections officers (Dkt. 13 at 10). While assertions that his participation in the investigation may have become known to other inmates is supported by correspondence Petitioner attached to his petition, it does not inform this Court's review of the claim that application of the Florida statute to Petitioner violated the *ex post facto* clause. Federal habeas relief does not extend to claims for equitable relief from the application of state statutes. Moreover, as evidenced by the assistant state attorney's letter of June 20, 1991, to the FPC, Petitioner's assertion that he was "forced" to take early release is contradicted by the fact that he requested consideration for the program (Dkt. 13, Ex. A).

Petitioner asserts that he objected to the terms of the control release supervision and only signed the form because he was told to sign it. This issue was addressed by the state circuit court in a written order finding as follows:

> The Court finds and determines that Plaintiff's claim is not credible in that his signature on his Control Release certificate plus his failure to object creates

the presumption that his early release was voluntarily accepted. *Bowles v. Singletary*, 698 So.2d 1201 (Fla.1997); *Delaine v. Singletary*, 715 So.2d 376 (Fla. 1st DCA 1998). Further, Plaintiff's claim is barred by principles of estoppel and waiver in that he waited until after the revocation of his Control Release to complain about his 1991 placement thereon. *See Bowles, supra; Roach v. Mitchell*, 456 So.2d 963 (Fla. 2d DCA 1984); *Gallagher v. State*, 421 So.2d 581 (Fla. 5th DCA 1982); *Joyner v. State*, 594 So.2d 328 (Fla. 2d DCA 1992), approved, 618 So.2d 205 (Fla. 1993). Plaintiff has consequently waived any *ex post facto* claim he may have had regarding the forfeiture of his gain-time.

The Court finds that Petitioner has not demonstrated that the state court's adjudication of this claim resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Petitioner has failed to demonstrate by clear and convincing evidence that the trial court's finding that his signature on his Notice of Control Release Terms and Conditions plus his failure to object creates the presumption that his early release was voluntarily accepted is not entitled to the presumption of correctness accorded such findings pursuant to 28 U.S.C. § 2254(e). He merely repeats the arguments he made to the state court and asks this Court to construe the facts differently. Such is not the role of the district court in reviewing a federal habeas petition.

**Ground Two**

Petitioner asserts that his "right to due process under the Fourteenth Amendment

was violated where [the] decision to revoke parole was arbitrary and capricious, was not based on substantial and willful violation, and was not supported by credible evidence." The crux of Petitioner's claim is that the FPC improperly rejected PE Cooper's express factual finding that Petitioner was not guilty of engaging in behavior which violated the terms of his control release based upon other reliable evidence. Rather, it substituted its own factual findings based on testimony by PE Buckner recounting earlier recanted testimony of Petitioner and his alleged victim to find that Petitioner committed domestic battery as a basis for the revocation order.

Although the facts which support this claim were presented to the state habeas court, the issue is not addressed in its decision affirming the FPC's revocation decision, see Dkt. 14, Ex. S at 5, 7–8, 12; Ex. U. Ignoring the fact that the FPC's decision to revoke Petitioner's control release supervision was based on findings in direct contradiction to the PE's findings, the state court addressed Petitioner's due process claim as follows: "[i]nasmuch as the [FPC] considered testimony regarding Petitioner's prior violation hearing, and not a record of such hearing not introduced at the later hearing, Petitioner has failed to support his claim of a due process violation" (Dkt. 14, Ex. U at 2).

Thus, the two principal standards governing review of § 2254 petitions, discussed *supra*, control the Court's review of this claim. Because the state court failed to make written findings addressing the tension between the FPC's decision and the findings by the PE, § 2254(e) is not applicable to this claim.

This does not, however, hinder the Court's application of § 2254(d). The Supreme Court has held that "[a] state court need not make detailed findings addressing all the evidence before it." *Miller–El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct.

1029, 154 L.Ed.2d 931 (2003). The decision is entitled to the same deference as if the court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1511, 155 L.Ed.2d 225 (2003). The state trial court apparently somehow reasoned that the FPC's failure to comply with the statutory requirements governing the revocation of the liberty interest recognized by the United States Supreme Court in *Morrissey* was not worthy of mention. Here, as in *Miller–El*, "[t]his failure ... does not diminish its significance." 537 U.S. at 347.

In support of his motion for summary judgment, Petitioner cites several recent decisions from Florida's District Courts of Appeal finding that the FPC's conduct in disregarding a hearing examiner's findings in favor of its own was not permissible under Florida law. *See Tedder v. Florida Parole Comm.*, 842 So.2d 1022, 1025 (Fla. 1st DCA 2003) (finding that where it is "apparent that the examiner's finding to the contrary was supported by competent, substantial evidence, the [FPC] was not permitted to disregard the examiner's finding in favor of its own"). Noting that in considering a petition for writ of *certiorari*, it is precluded from "enter[ing] judgment on the merits[ ] or direct[ing] the lower tribunal to enter any particular order," the *Tedder* court found that the state circuit court's order affirming the FPC's decision to revoke Tedder's control release supervision in contravention to the hearing examiner's findings constituted "a departure from the essential requirements of law," and quashed the lower court's order. *Id.* at 1025. The case was then remanded with instructions to expedite reconsideration of Tedder's petition. *Id.* at 1026. *See also Mabrey v. Florida Parole Commission*, 858 So.2d 1176, 1183 (Fla. 2d DCA 2003) (finding that "[i]f the parole examin-

er's finding was supported by competent, substantial evidence, then the parole examiner's finding *must* prevail over the Parole Commission's conclusion to the contrary" (emphasis added)).

Respondents argue that Petitioner's claim is not cognizable in a federal habeas petition because it allegedly does not rise to the level of a violation of the constitution. 28 U.S.C. § 2254. *See also Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001), *cert. denied,* 535 U.S. 1011, 122 S.Ct. 1593, 152 L.Ed.2d 509 (2002) (holding that "[a] petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Respondent is correct in that a federal court is not concerned with violations of state law unless the violation raises federal constitutional problems, *see Wilcox v. Ford,* 813 F.2d 1140, 1145 n. 7 (11th Cir.1987), *cert. denied,* 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987), and generally, a state's interpretation of its own laws and rules provides no basis for federal habeas corpus relief. *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988).

On the other hand, Respondent's narrow reading of Petitioner's claim taxes the credulity of the Undersigned. Federal habeas relief is available if a petitioner establishes that the state proceedings resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). For reasons set forth *infra,* the Undersigned finds that the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, resulting in both an erroneous and unreasonable application of

federal law. *See Williams v. Taylor,* 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (finding that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law").

The seminal case on due process for parole revocation proceedings is *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). One who is granted parole has a right to basic procedural due process if that liberty interest is revoked. *Id.* at 481. *See also Brown v. Lundgren,* 528 F.2d 1050, 1052—53 (5th Cir.1976).[12] The *Morrissey* court set forth the due process requirements for a revocation proceeding, but declined to "write a code of procedure," noting that each State bears that responsibility. 408 U.S. at 488. In the instant case, the state court cited *Morrissey* in its decision denying Petitioner's petition for state habeas relief. Merely acknowledging that an issue has been addressed by the Supreme Court does not, however, satisfy the requirements of § 2254(d). A state court's citation to relevant Supreme Court precedent should not end the inquiry any more than "[t]he state court's failure to cite the relevant Supreme Court precedents does not mean that AEDPA deference does not apply." *Parker v. Secretary for Dept. of Corrections,* 331 F.3d 764, 776 (11th Cir.2003) (citing *Isaacs v. Head,* 300 F.3d 1232, 1260 (2002)). The Federal habeas courts should not accept without question a state court decision merely because it cites federal case law in its order rejecting a state prisoner's claims. The fact that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decision cannot be ignored. *See Putman,* 268 F.3d at 1241. *See also Miller–El,* 537 U.S. at 340.

---

**12.** Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Prich-*

*ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Federal habeas courts must instead make an independent determination whether the state court's decision is "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," while giving due deference to the state court's factual findings, unless contradicted by clear and convincing evidence. 28 U.S.C. § 2254(d)-(e).

While the Constitution itself does not guarantee an inmate serving a lawful sentence pursuant to a valid criminal conviction early release from prison, *see Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), "[o]nce an individual has been released into society under the constraints of either parole or probation, ... the resulting freedom, 'although indeterminate, includes many of the core values of unqualified liberty' and thus inherently 'falls within the protection of the Fourteenth Amendment' " *see Ellard v. Alabama Bd. of Pardons and Paroles,* 824 F.2d 937, 942 (11th Cir.1987), *cert. denied,* 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988) (while there was no liberty interest for the prisoner in the expectation of parole, a different issue was whether having exercised the discretion to grant it, the parole board was constrained by substantive limitations on its authority to rescind parole) (citations omitted) (quoting *Morrissey,* 408 U.S. at 482, and citing *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). *See also Thomas v. Florida Parole Comm'n,* 872 So.2d 339, 340 (finding that principles of law applicable to probation are equally applicable to revocation of control release).

The Eleventh Circuit has recognized that "liberty interests of prisoners that are protected by the [F]ourteenth [A]mendment 'arise from two sources—the due process clause itself and the laws of the State.' " *Ellard,* 824 F.2d at 942 (citing *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). A liberty interest arises from state law "when a state places 'substantive limitations on official discretion.' " *Id.* (citing *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)). Thus, although the Constitution itself does not guarantee an early release from incarceration, "once a state has created the right ... and has established standards for its revocation, 'the prisoner's interest has real substance' and falls within the protections of the [F]ourteenth [A]mendment." *Id.* (citation omitted).

Petitioner was placed on controlled release in 1991 pursuant to Fla. Stat. § 947.146 after serving three years of his sentence. In effecting Petitioner's release, the state created a "liberty interest" conditioned on his compliance with the terms of the controlled release program.

Where a claimed liberty interest does not arise from the due process clause itself, "[t]he ground for any constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising" the claimed liberty interest. *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). The due process clause, in short, prohibits the states from negating by their actions rights that they have conferred by their words ... The due process clause, in short, prohibits the states from negating by their actions rights that they have conferred by their words. The states, of course, may elect not to confer rights, such as parole, that are not inherent in the Constitution. But once a state does choose to confer such a right, the prisoner's interest has "real substance," and the right can be revoked only under the limitations imposed by the Due Process

Clause. In view of the statutory restrictions on the authority of the Parole Board to revoke a parole, we conclude that Ellard had a constitutionally protected liberty interest.

*Id.* at 943–44.

The Supreme Court has held that a statute "having no definitions, no criteria, and no mandated "shalls," creates no analogous duty or constitutional entitlement." *Connecticut Bd. Of Pardons v. Dumschat*, 452 U.S. 458, 466, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). A review of the Florida statute setting forth the procedures to be followed by the FPC in revocation proceedings supports a finding that the FPC cannot second guess the PE's findings without first concluding that his findings are unsupported by competent, substantial evidence. Section 947.141, Fla. Stat., states, in pertinent part, as follows:

> Within a reasonable time following the hearing, the commissioner or the commissioner's duly authorized representative who conducted the hearing shall make *findings of fact* in regard to the alleged violation. A panel of no fewer than two commissioners shall enter an order determining whether the charge of violation of conditional release, *control release*, conditional medical release, or addiction-recovery supervision has been sustained *based upon the findings of fact presented by the hearing commissioner or authorized representative.* By such order, the panel may revoke conditional release, *control release*, conditional medical release, or addiction-recovery supervision and thereby return the releasee to prison to serve the sentence imposed, reinstate the original order granting the release, or enter such other order as it considers proper.

Fla. Stat. 947.141(4) (emphasis added). Thus, the Florida statute mandates a specific response by the FPC "based upon the findings of fact presented by . . . the au-

thorized representative" *id.,* which in the instant case was PE Cooper. "In general, revocation hearings are governed by due process considerations and are subject to the requirement that they be conducted within a reasonable time." *Gillard v. State*, 827 So.2d 316 (Fla. 1st DCA 2002) (citing *Morrissey*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). *See also Dees v. State*, 295 So.2d 296, 297 (Fla. 1974).

Given that the FPC's "duly authorized representative" made specific findings following the revocation hearing, the FPC was, by statute, bound to determine "whether the charge of violation of conditional release, *control release*, conditional medical release, or addiction-recovery supervision [was] sustained *based upon the findings of fact presented by the . . . authorized representative."* Fla. Stat. 944.141(4).

The statute effectively mandates that the FPC defer to the judgment of its "duly authorized representative" in assigning credibility to the witnesses and weighing the evidence. The PE, having heard testimony from eight witnesses and reviewed the exhibits presented by Petitioner during the hearing before entering a finding that he was "not guilty" of violating the terms of his controlled release, had an opportunity to observe the demeanor of the witnesses and evaluate their credibility in light of the evidence presented. To sustain its findings, the FPC contends that it is authorized to override the findings of a PE that are "deficient inasmuch as they omitted crucial competent and substantial evidence" (Dkt. 35 at 4). Asserting that its review of a PE's findings and recommendation is analogous to an appellate court's review of a trial court's findings of fact, the FPC argues that it is not "bound by a deficient statement in a hearing summary which does not accurately reflect the

evidence contained in the same summary. If an appellate court found that a trial court similarly disregarded crucial trial testimony the case would be reversed." Dkt. 35 at 4. Legally, the FPC is correct; functionally, its argument goes wanting. Nowhere in the record did the FPC make any finding that PE Cooper's factual determination of guilt was not supported by substantial evidence. *Tedder,* 842 So.2d at 1025. In the context of administrative proceedings, substantial evidence is defined as "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The overwhelming firsthand evidence presented at the hearing, in fact, supports the conclusion of the PE. Specifically, the testimony of three witnesses, each of whom gave firsthand testimony to the events which gave rise to the domestic battery charge, and documentary evidence support the conclusion reached by PE Cooper. The FPC simply chose to disagree with the PE's conclusion and substitute its own based on the testimony relayed by PE Buckner from the prior hearing. Thus, tellingly the FPC argues that the PE erred in failing to consider testimony that contravenes his not guilty finding (Dkt. 35 at 3). In his summary, PE Cooke provided a complete and accurate review of the testimony of each witness (Dkt. 1, Ex. F). First, a PE has no obligation to refer to *all* testimony in his findings. *See Morrissey,* 408 U.S. at 487–88; Fla. Stat. § 947.141. Second, that sort of factual second guessing is contrary to the statute, and the Florida courts have found it to be inconsistent with the rights of parolees. *See Mabrey,* 858 So.2d at 1183; *Tedder,* 842 So.2d at 1025.

The FPC cites the Supreme Court's holding in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill* in support of its assertion that "only a 'modicum' of evidence is necessary to support an administrative decision regarding inmates even when such a decision does involve due process rights" (Dkt. 35 at 4). 472 U.S. 445, 454–455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (finding that a disciplinary decision revoking a prisoner's good time credits will withstand scrutiny "if there [i]s some evidence from which the conclusion of the administrative tribunal c[an] be deduced."). *Hill,* however, is unavailing. The *Hill* court limited its holding to disciplinary proceedings the results of which would result in the revocation of good time credits. *Id.* at 456. In its earlier decision in *Wolff v. McDonnell,* the Supreme Court recognized that the procedures necessary to meet the "due process" requirement in parole revocation proceedings, while less than that of a defendant during his criminal trial, is greater than in prison disciplinary proceedings, stating as follows:

> Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him. For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored.

*Wolff v. McDonnell,* 418 U.S. 539, 560–61, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See also Whitehead v. United States Parole Comm'n.,* 755 F.2d 1536 (11th Cir.1985) (finding that the revocation decision re-

quired "a preponderance of the evidence supports the parole violation, while the criminal proceeding requires proof beyond a reasonable doubt.").

As Respondents assert in their response to the motion for summary judgment (Dkt. 35 at 6), relief is available under § 2254 for constitutional violations; violations of state law are not a basis for relief *unless* the violation raises a due process issue. *See* 28 U.S.C. § 2254. Federal habeas courts should not reject a valid Fourteenth Amendment due process claim merely because the conduct complained of also violates a state law. The fact that the Florida legislature has also recognized a releasee's right to due process in enacting a statute setting out the procedures to be followed by the FPC in revoking a control release supervision does not strip the releasee of his federal constitutional right to due process.

"The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers." *Harris*, 394 U.S. at 291. Given the state of Petitioner's health and medical prognosis, with an anticipated release date of February 2, 2013, 10.4 years after the expiration date of his sentence had he never sought release at all, Petitioner is effectively facing the prospect of ending his life inside an FDOC facility because his girlfriend made a poor choice in the words she used in describing to a police officer what occurred during a family quarrel over a set of car keys. See Dkt. 39 at 14 (under oath, Khaleel stated "I realized I shouldn't have used the word pushed, cause there was no, he didn't actually push, there was no pushing involved. It was just the interaction that I, that caused me to use that word.").

As the FPC stated in the revocation order, revocation proceedings are governed by Chapter 947 of the Florida statutes. Because the FPC failed to comply with the statute governing revocation proceedings, a statute recognized by the Florida courts as establishing a right to due process, the FPC's action was contrary to state law[13] *and* to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). *See Morrissey*, 408 U.S. at 481; *Gillard*, 827 So.2d at 317. The Undersigned therefore finds that Petitioner's Fourteenth Amendment right to due process was violated when the FPC failed to comply with the statutorily mandated procedures for revocation of Petitioner's control release supervision. *See* Fla. Stat. 947.141(4).

Accordingly, there being no genuine issue of material fact, the Undersigned finds that Petitioner is entitled to judgment as a matter of law.

## CONCLUSION

The Undersigned therefore REPORTS and RECOMMENDS that the District Court grant Petitioner's motion for summary judgment and issue the writ of habe-

---

**13.** The Court has reviewed recent state court decisions reversing FPC revocation orders under similar circumstances based on "principles of administrative law" rather than the statute, finding that "[i]f the parole examiner's finding was supported by competent, substantial evidence, then the parole examiner's finding must prevail over the Parole Commission's conclusion to the contrary." Mabrey, 858 So.2d at 1182; *Tedder,* 842 So.2d at 1025. Why the *Tedder* and *Mabrey* courts based their decisions on "principles of administrative law" rather than the statute itself is not clear. The statute clearly states that "the commissioners *shall* enter an order determining whether or not the charges of parole violation have been sustained, *based on the findings of fact made by the ... duly authorized representative of the commission.*" Fla. Stat. 944.23(6)(b).

as corpus, instructing the FPC to release Petitioner under the terms and conditions of the July 9, 1991 control release agreement.

December 6, 2004.